Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RILESH DESAI,<br><br>                              Plaintiff,<br><br>            vs.<br><br>SPECTRUM PHARMACEUTICALS,<br>INC., WILLIAM L. ASHTON,<br>BRITTANY K. BRADRICK, SETH H.Z.<br>FISCHER, JUHYUN LIM, THOMAS J.<br>RIGA, and JEFFREY L. VACIRCA,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation  of  §  14  (a)  of  the  Securities<br>      Exchange Act of 1934<br>(2)  Violation  of  §  20(a)  of  the  Securities<br>      Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Rilesh Desai ("Plaintiff"), by and through his attorneys, alleges upon information

and belief, except for those allegations that pertain to him, which are alleged upon personal

knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against Spectrum Pharmaceuticals, Inc.

("Spectrum" or the "Company") and the Company's Board of Directors (the "Board" or the

"Individual Defendants", collectively with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to Assertio Holdings, Inc. ("Parent"), through

merger vehicle Spade Merger Sub 1, Inc. ("Merger Sub," and together with Parent, "Assertio") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a April 25, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Spectrum common stock will be converted into the right to receive 0.1783 shares of Assertio and one CVR which entitles Spectrum stockholders to receive up to an additional $0.20 in cash or Assertio stock upon certain milestones regarding Spectrum's flagship drug being reached.   The Proposed Transaction values Spectrum stock at approximately $1.14 per share without the CVR and up to $1.34 including a maximum CVR redemption.

3.      Thereafter, on June 2, 2023, Assertio filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement fails to disclose why the Board agreed to accept a portion of the merger consideration in the form of a non-guaranteed CVR.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain

conflicts of interest for management; (b) the financial projections for Spectrum and Assertio, provided by Spectrum and Assertio management to the Board and the Board's financial advisor Guggenheim Securities, LLC ("Guggenheim") or Assertio's financial advisors SVB Securities, LLC ("SVB") and H.C. Wainwright & Co., LLC ("Wainwright"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Guggenheim, SVB, and/or Wainwright, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Spectrum stockholder.

8.      Defendant Spectrum is a biopharmaceutical company, develops and commercializes oncology drug products.  Spectrum is incorporated in Delaware and has its principal place of business at Pilot House-Lewis Wharf, 2 Atlantic Avenue, Boston, MA 02110. Shares of Spectrum common stock are traded on the NASDAQ Stock Exchange under the symbol "SPPI".

9.      Defendant William L. Ashton ("Ashton") has been a Director of the Company at all relevant times.  In addition Defendant Ashton serves as the Chair of the Company Board.

10.     Defendant Brittany K. Bradrick ("Bradrick") has been a director of the Company at all relevant times.

11.     Defendant Seth H.Z. Fischer ("Fischer") has been a director of the Company at all relevant times.

12.     Defendant Juhyun Lim ("Lim") has been a director of the Company at all relevant times.

13.     Defendant Thomas J. Riga ("Riga") has been a director of the Company at all relevant times.  In addition Defendant Riga serves as the Company's President and Chief Executive Officer ("CEO").

14.     Defendant Jeffrey L. Vacirca ("Vacirca") has been a director of the Company at all relevant times.

15.     Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16.     Non-Party Parent is a commercial pharmaceutical company, provides medicines in the areas of neurology, rheumatology, and pain and inflammation.  Parent is organized under the laws of Delaware and is headquartered at 100 S. Saunders Road, Suite 300, Lake Forest, IL 60045.  Shares of Parent common stock trade on the NASDAQ Exchange under the ticker "ASRT".

17.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21.     Spectrum is a biopharmaceutical company, develops and commercializes oncology drug products.

22.     The Company offers ROLVEDON(Eflapegrastim), a novel long-acting granulocyte colony-stimulating factor for chemotherapy-induced neutropenia. Spectrum also develops Poziotinib, a novel irreversible tyrosine kinase inhibitor for non-small cell lung cancer tumors with various mutations.

23.     The Company has co-development, commercialization, and in-license agreements with Hanmi Pharmaceutical Co. Ltd.; a patent and technology license agreement with The University of Texas M.D. Anderson Cancer Center; and license agreement with Therapyx, Inc.

24.     The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive clinical success.  For example, in the March 22, 2023 press release announcing its Q4 and FY 2022 financial and clinical results, the Company highlighted such clinical successes as the

first launch year for ROLVEDON, with net sales for the quarter and year end totaling $10.1 million.

25.     Speaking on these positive results, Defendant and CEO Riga stated, "It's been a transformative year for Spectrum as we have become a commercially focused company. We've approached the launch of ROLVEDON with a disciplined strategy and an understanding that Spectrum's long-term growth is dependent upon the product's success. We're off to a solid start and are encouraged by the initial customer receptivity to ROLVEDON."

26.     Riga continued, noting the Company's likelihood for future success, stating, "Commercial success is foundational to the Company's future and, with the right people in place, a lean infrastructure, and an ample cash runway, we have a tremendous opportunity moving forward."

27.     Despite this upward trajectory, the Individual Defendants have caused Spectrum to enter into the Proposed Transaction without providing requisite information to Spectrum stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Significantly, the Registration Statement fails to disclose why the Board agreed to accept a portion of the merger consideration in the form of a non-guaranteed CVR.

30.     Additionally, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Assertio stock price fluctuate prior to the consummation of the Proposed Transaction.

31.     The Registration Statement also fails to indicate whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee.  On the other hand, if no such committee was created, the Registration Statement fails to provide adequate explanation behind such a decision.

32.     Moreover, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Assertio, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On February 23, 2023, Spectrum and ASSERTIO issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **LAKE FOREST, Ill., and BOSTON, April 25, 2023 (GLOBE NEWSWIRE)** –
> Assertio Holdings, Inc. (Nasdaq: ASRT) ("Assertio"), a specialty pharmaceutical company offering differentiated products to patients, and Spectrum Pharmaceuticals, Inc. (Nasdaq: SPPI) ("Spectrum"), a commercial stage biopharmaceutical company focused on novel and targeted oncology, today announced that they have entered into a definitive agreement pursuant to which Assertio will acquire all outstanding shares of Spectrum in an all-stock and contingent value rights ("CVR") transaction.

"The addition of Spectrum's commercial capabilities and ROLVEDON, a novel long-acting G-CSF product recently launched into a blockbuster market in October 2022, exemplifies Assertio's attractiveness as an acquirer of new, accretive assets across diverse therapeutic categories, and ability to continue their growth and achieve profitable contributions faster and more efficiently than could be achieved on a standalone basis. We intend to retain the majority of Spectrum's commercial infrastructure, which we believe is synergistic to our digital non-personal platform, deploying these complementary dual channels to support clinical messaging, reimbursement education and ROLVEDON awareness to further aid and accelerate its launch," said Dan Peisert, President and Chief Executive Officer of Assertio.

"We are excited to combine with Assertio in a transaction that will deliver significant value to our stockholders and the opportunity to share in the future upside of ROLVEDON," said Tom Riga, President and Chief Executive Officer of Spectrum Pharmaceuticals. "Our mission at Spectrum has always been to make a difference in the lives of patients and with Assertio, we have a partner that will enable us to deliver on this promise. Our combined assets and commercial infrastructure will position us to accelerate ROLVEDON's launch for the benefit of patients, maximize its potential and drive further growth. We are proud of the launch trajectory our team has achieved with ROLVEDON and look forward to an exciting new chapter."

**Terms of the Agreement**

Under the terms of the agreement, at closing, Spectrum stockholders will receive a fixed exchange ratio of 0.1783 shares of Assertio common stock for each share of Spectrum common stock they own, implying an upfront value of $1.14 per Spectrum share (approximately $248 million) based on Assertio's stock price on April 24, 2023 and an initial 65% premium to Spectrum's closing price on such date. Additionally, Spectrum stockholders will receive one CVR per Spectrum share entitling them to receive up to an additional $0.20 per share in total (approximately $43 million), payable in cash or stock at Assertio's election, for $1.34 (approximately $291 million), a total potential premium of 94%. Subject to adjustments, each CVR shall represent the right to receive $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $175 million during the calendar year ending December 31, 2024, and $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $225 million during the calendar year ending December 31, 2025.

Following the close of the transaction, Assertio stockholders will own approximately 65% of the combined company, and Spectrum stockholders will own approximately 35%, on a fully diluted basis.

**Transaction Strategic and Financial Rationale**

Strengthened Commercial Infrastructure and Resources: Assertio's innovative digital non-personal sales model complements Spectrum's in-person commercial infrastructure, providing greater market access and resources than either company as a standalone entity.

Expected to Be Accretive to Adjusted EPS and Operating Cash Flow in 2024: Assertio intends to retain the majority of Spectrum's commercial team and add operating costs of approximately $60 million annually. The remaining cost synergies are expected to accelerate and enhance the profit opportunities for the combined company and generate double-digit accretion to adjusted EPS and increased operating cash flow in 2024.

Enhanced IP Portfolio: ROLVEDON's intellectual property protection is anticipated to extend through 2036, complementing Assertio's portfolio of traditional and non-traditional IP protection, including assets with protection extending beyond 2040 and plans to secure additional protections on existing assets.

Improved Strategic Profile: The transaction enables the combined company to have a more scalable and competitive infrastructure for continuing the development and acquisition of existing and prospective new commercial- and late development-stage products suited to Assertio's unique omni-channel sales strategy.

Platform Diversification: In addition to Assertio's key assets Indocin, Sympazan and Otrexup, Spectrum's key asset ROLVEDON will represent meaningful further asset diversification. ROLVEDON is a long-acting growth factor (G-CSF) indicated to decrease the incidence of infection, as manifested by febrile neutropenia, in adult patients with non-myeloid malignancies receiving myelosuppressive anti-cancer drugs associated with clinically significant incidence of febrile neutropenia.

Access to Capital Markets: With enhanced scale and greater diversification of revenue generating commercial assets, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the capital markets.

**Approvals and Timing to Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the third quarter of 2023, subject to approval by Assertio and Spectrum stockholders and the satisfaction of customary closing conditions.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that Spectrum insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Spectrum.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While the Registration Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

| Name of Beneficial Owner | Number of Shares of Spectrum Common Stock Beneficially Owned | Percentage of Class |
|---|---|---|
| **5% Stockholders** | | |
| Hanmi Pharmaceutical Co., Ltd.(1) | 15,332,331 | 7.5% |
| Armistice Capital, LLC(2) | 17,000,000 | 8.3% |
| **Directors and Named Executive Officers** | | |
| Thomas J. Riga(3) | 3,448,446 | 1.65% |
| Keith M. McGahan(4) | 1,580,827 | * |
| Francois Lebel | — | — |
| William L. Ashton(5) | 219,529 | * |
| Seth H.Z. Fischer(6) | 164,268 | * |
| Juhyun Lim(7) | 37,293 | * |
| Jeffrey L. Vacirca, M.D.(8) | 434,953 | * |
| Brittany K. Bradrick(9) | 27,380 | * |
| All executive officers and directors as a group (8 persons)(10) | 5,912,696 | 2.85% |

37.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger

consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows.

| Name of Executive Officer or Non-Employee Director | Number of Shares Subject to Spectrum Options | | | |
| --- | --- | --- | --- | --- |
| | Vested Spectrum Options (#) | Unvested Spectrum Options (#) | Estimated Upfront Value of Spectrum Options ($) | Maximum Value of CVRs ($) |
| Thomas J. Riga | 1,215,313 | 5,542,627 | $3,674,514 | $1,189,813 |
| Keith M. McGahan | 301,359 | 1,380,718 | $1,052,359 | $  336,415 |
| Nora E. Brennan | 505,319 | 1,850,638 | $1,290,262 | $  471,191 |
| William L. Ashton | — | 75,000 | $      750 | $   15,000 |
| Seth H.Z. Fischer | — | 75,000 | $      750 | $   15,000 |
| Juhyun Lim | — | 75,000 | $      750 | $   15,000 |
| Jeffrey L. Vacirca, M.D. | — | 75,000 | $      750 | $   15,000 |
| Brittany K. Bradrick | — | 86,301 | $      863 | $   17,260 |

| Name of Executive Officer | Number of Shares Subject to Unvested Spectrum RSUs (#) | Estimated Upfront Value of Unvested Spectrum ($) | Maximum Value of CVRs ($) |
| --- | --- | --- | --- |
| Thomas J. Riga | 1,317,694 | $1,502,171 | $263,539 |
| Keith M. McGahan | 386,057 | $  440,105 | $  77,211 |
| Nora E. Brennan | 463,005 | $  527,826 | $  92,601 |

| Name of Executive Officer | Number of RSA Shares | Estimated Upfront Value of RSA Shares | Maximum Value of CVRs ($) |
| --- | --- | --- | --- |
| Thomas J. Riga | 204,471 | $233,097 | $40,894 |
| Keith M. McGahan | 36,770 | $  41,918 | $  7,354 |

38.     Moreover, certain employment agreements with certain Spectrum executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to large payouts, compensation not shared by Plaintiff.  Notably, despite such agreements existing for several Spectrum insiders, including Defendant Riga, the Registration

Statement fails to account for the amount of consideration payable to Company insiders as a consequence of these agreements being exercised in connection with the consummation of the Proposed Transaction.

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Spectrum, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     On June 2, 2023, the Spectrum Board and Assertio caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Adequate information regarding why the Board agreed to accept a portion of the merger consideration in the form of a non-guaranteed CVR;

b.   Adequate information as to why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Assertio stock price fluctuate prior to the consummation of the Proposed Transaction;

c.   Whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee. If no such committee was created, the Registration Statement fails to provide adequate explanation behind such a decision;

d.   Whether the confidentiality agreements entered into by the Company with Assertio differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Assertio, would fall away; and

f.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Spectrum Financial Projections*

43.   The Registration Statement fails to provide material information concerning financial projections for Spectrum provided by Spectrum management to the Board, Guggenheim, SVB, and Wainwright and relied upon by Guggenheim, SVB, and Wainwright in their analyses. The Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

44.   Notably the Registration Statement reveals that as part of its analyses, Guggenheim reviewed certain, "non-public business and financial information regarding Spectrum's … businesses and future prospects."  SVB similarly stated it reviewed, "certain financial forecasts and other information and data, relating to … Spectrum."  Finally, Wainwright indicated that it reviewed, "certain internal financial analyses and forecasts for … Spectrum on a standalone basis."

45.   The Registration Statement should have, but fails to provide, certain information in the projections that Spectrum management provided to the Board, Guggenheim, SVB, and Wainwright.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.     With regard to the *Spectrum Financial Projections*, prepared by Spectrum management, the Registration Statement fails to disclose material line items, including the following:

a.  Gross Profit, including the definition of this metric used, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric; and

b.  Unlevered Free Cash Flow, including the definition of this metric used, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric.

47.     With regard to the *Assertio Adjusted Spectrum Projections*, prepared by Spectrum management and adjusted by Assertio management, the Registration Statement fails to disclose material line items, including the following:

a.  Gross Profit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: total revenue, cost of goods sold, cost of goods sold related to Spectrum's ROLVEDON product, certain royalty expenses, and milestone payments;

b.  Operating Income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: cost of goods sold related to Spectrum's ROLVEDON product, certain royalty expenses, milestone payments, restructuring costs, general & administrative costs, R&D costs and sales & marketing cost; and

c.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: after-tax

unlevered operating profit, depreciation and amortization, capital expenditures and changes in working capital.

48. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

50. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data for Spectrum being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Guggenheim, SVB, or Wainwright's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Assertio's Financial Projections*

52. The Registration Statement fails to provide material information concerning financial projections for Assertio provided by Spectrum management to the Board, Guggenheim, SVB, or Wainwright and relied upon by Guggenheim, SVB, or Wainwright in their analyses. The

Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

53.     Notably the Registration Statement reveals that as part of its analyses, Guggenheim reviewed certain, "non-public business and financial information regarding … Assertio's businesses and future prospects."  SVB similarly stated it reviewed, "certain financial forecasts and other information and data, relating to Assertio..."  Finally, Wainwright indicated that it reviewed, "certain internal financial analyses and forecasts for Assertio on a standalone basis…"

54.     The Registration Statement should have, but fails to provide, certain information in the projections that Assertio management provided to the Board, Guggenheim, SVB, or Wainwright.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

55.     With regard to the *Assertio Projections*, prepared by Assertio management, the Registration Statement fails to disclose material line items, including the following:

a.   Gross Profit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: cost of goods sold;

b.   Operating Income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: cost of goods sold, certain non-GAAP operating expenses, certain legal expenses and other expenses, depreciation, amortization and stock-based compensation expense,

and fair value adjustments to contingent consideration or derivative liability; and

c.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: depreciation and amortization, certain royalties payable by Assertio related to its Indocin product, taxes, changes in net working capital and capital expenditures.

56.  With regard to the *Assertio Stand-Alone Financial Projections Developed by Spectrum Management*, prepared by Assertio management and adjusted by Spectrum management, the Registration Statement fails to disclose material line items, including the following:

a.  Gross Profit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the cost of goods sold; and

b.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: net operating profit after tax, depreciation and amortization, changes in net working capital and capital expenditures.

57.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

58.  The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

59.     In addition, while the Registration Statement provides a section for "estimated synergies" it fails to provide a breakdown of the constituent metrics underlying such projections.

60.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

61.     Without accurate projection data for Assertio or the estimated Synergies being presented in the Registration Statement, Plaintiff is unable to properly evaluate the merger consideration's true worth, the accuracy of the Guggenheim, SVB, or Wainwright's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Guggenheim*

62.     In the Registration Statement, Guggenheim describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

63.     With respect to the *Spectrum - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

      a.   Spectrum's net present value of the cash tax savings from net operating losses;

      b.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 13.00% to 16.00%;

      c.   Spectrum's weighted average cost of capital; and

      d.   The terminal value as of December 31, 2031 for Spectrum utilized.

64.    With respect to the *Spectrum - Equity Financing Analysis*, the Registration Statement fails to disclose.

      a.   The specific Analyst stock price targets utilized; and

      b.   The specific Wall Street firms and/or analysts which generated the utilized price targets.

65.    With respect to the *Assertio - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

      a.   Assertio's net present value of the cash tax savings from net operating losses;

      b.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.75% to 14.25%;

      c.   Assertio's weighted average cost of capital; and

      d.   The terminal value as of December 31, 2035 for Assertio utilized.

66.    With respect to the *Assertio - Equity Financing Analysis*, the Registration Statement fails to disclose.

      a.   The specific Analyst stock price targets utilized; and

      b.   The specific Wall Street firms and/or analysts which generated the utilized price targets.

67.     With respect to the *Pro Forma - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.  Spectrum's net present value of the cash tax savings from net operating losses

    b.  Assertio's net present value of the cash tax savings from net operating losses;

    c.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 13.00% to 16.00% for Spectrum

    d.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.75% to 14.25% for Assertio;

    e.  Spectrum's weighted average cost of capital

    f.  Assertio's weighted average cost of capital; and

    g.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.50% to 14.00% for the combined entity.

68.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

69.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Spectrum stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by SVB*

70.     In the Registration Statement, SVB describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

71.     With respect to the *Assertio - Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the following:

> a.  The specific inputs and assumptions used to determine the utilized multiple reference range of 1.6x to 2.9x EV/2023E Net Revenue;
>
> b.  The specific inputs and assumptions used to determine the utilized multiple reference range of 1.6x to 2.3x EV/2024E Net Revenue

72.     With respect to the *Assertio - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

> a.  The terminal values for Assertio calculated;
>
> b.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -10.0%;
>
> c.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10.0% to 13.0%;
>
> d.  Assertio's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and
>
> e.  The "certain metrics" utilized, including the selected companies' levered and unlevered betas, a historical equity risk premium, size premia and yields

for U.S. treasury notes, as well as a capital asset pricing model analysis of Assertio.

73.     With respect to the *Assertio - Equity Financing Analysis*, the Registration Statement fails to disclose.

    a.   The specific Analyst stock price targets utilized; and

    b.   The specific Wall Street firms and/or analysts which generated the utilized price targets.

74.     With respect to the *Spectrum - Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized multiple reference range of 3.2x to 6.1x EV/2023E Net Revenue;

    b.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2.3x to 4.0x EV/2024E Net Revenue

75.     With respect to the *Spectrum - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.   The terminal values for Spectrum calculated;

    b.   The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -10.0%;

    c.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.0% to 14.0%;

    d.   Spectrum's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

e.   The "certain metrics" utilized including the selected companies' levered and unlevered betas, a historical equity risk premium, size premia and yields for U.S. treasury notes, as well as a capital asset pricing model analysis of Spectrum.

76.   With respect to the *Spectrum - Equity Financing Analysis*, the Registration Statement fails to disclose.

a.   The specific Analyst stock price targets utilized; and

b.   The specific Wall Street firms and/or analysts which generated the utilized price targets

77.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

78.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.   Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Spectrum stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Wainwright*

79.   In the Registration Statement, Wainwright describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

80.     With respect to the *Assertio – Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

  a.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 8.5% to 11.5%;

  b.  Assertio's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

  c.  The "certain company-specific inputs" utilized, including Assertio's capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a company beta, in addition to certain financial metrics relating to U.S. financial markets;

  d.  The range of illustrative terminal values for Assertio calculated;

  e.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -20.0%; and

  f.  The enterprise value for Assertio calculated.

81.     With respect to the *Assertio – Select Companies Analysis — 2023 and 2024 Revenue Multiples*, the Registration Statement fails to disclose the following:

  a.  The specific metrics observed for all selected companies analyzed;

  b.  The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 2.0x to 3.7x for FY 2023E Revenue; and

c. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 1.5x to 3.4x for FY 2024E Revenue.

82. With respect to the *Spectrum – Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.7% to 12.7%;

b. Spectrum's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

c. The "certain company-specific inputs" utilized, including Spectrum's capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a company beta, in addition to certain financial metrics relating to U.S. financial markets;

d. The range of illustrative terminal values for Spectrum calculated; and

e. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -30.0% to -10.0%.

83. With respect to the *Spectrum – Select Companies Analysis — 2023 and 2024 Revenue Multiples*, the Registration Statement fails to disclose the following:

a. The specific metrics observed for all selected companies analyzed;

b. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 2.1x to 8.6x for FY 2023E Revenue; and

c. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 1.2x to 4.7x for FY 2024E Revenue.

84.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

85.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Spectrum stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

86.     Plaintiff repeats all previous allegations as if set forth in full herein.

87.     Defendants have disseminated the Registration statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

88.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

89.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Registration statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

90.     The Registration statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration statement is materially misleading and omits material facts that are necessary to render them non-misleading.

91.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

92.     The Individual Defendants were at least negligent in filing a Registration statement that was materially misleading and/or omitted material facts necessary to make the Registration statement not misleading.

93.     The misrepresentations and omissions in the Registration statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

94.     Plaintiff repeats all previous allegations as if set forth in full herein.

95.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

96.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

97.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Spectrum's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration statement and are therefore responsible and liable for the misrepresentations contained herein.

98.     The Individual Defendants acted as controlling persons of Spectrum within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Spectrum to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Spectrum and all of its employees.  As alleged above, Spectrum is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration statement that does not contain any untrue statements of material fact and

that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 7, 2023                                  **BRODSKY & SMITH**

By: *Evan J. Smith*
_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*